1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   CHESTER RAY WISEMAN,                    )   Case No.: 1:14-cv-00831-DAD-SAB (PC)
                                             )
12                    Plaintiff,             )
                                             )   FINDINGS AND RECOMMENDATIONS
13           v.                              )   REGARDING DEFENDANTS' MOTIONS TO
                                             )   DISMISS AND PLAINTIFF'S MOTION FOR
14   MATTHEW CATE, et al.,                   )   LEAVE TO FILE A THIRD AMENDED
                                             )   COMPLAINT
15                    Defendants.            )
                                             )   [ECF Nos. 27, 36, 40, 42, 44]
16   _____  )

17          Plaintiff Chester Ray Wiseman is appearing pro se and in forma pauperis in this civil rights

18   action pursuant to 42 U.S.C. § 1983.

19                                    **I.**

20                        **RELEVANT PROCEDURAL HISTORY**

21          This action is proceeding on Plaintiff's first amended complaint against Defendants Biter and

22   Trimble for housing Plaintiff in conditions of confinement in violation of the Eighth Amendment.

23          On April 16, 2015, Defendant Biter filed a motion to dismiss.  (ECF No. 27.)  Plaintiff filed an

24   opposition on May 20, 2015, and Defendant filed a reply on May 27, 2015.  (ECF Nos. 30, 32.)

25          On June 23, 2015, Defendant Trimble filed a motion to dismiss.  (ECF No. 36.)

26          On July 16, 2015, Plaintiff filed a motion for leave to file a second amended complaint, along

27   with a copy of the second amended complaint which was lodged by the Court.  (ECF Nos. 40, 41.)

28

On August 3, 2015, Plaintiff filed an opposition to Defendant Trimble's motion to dismiss. (ECF No. 43.)  On this same date, Plaintiff filed a motion for leave to file a third amended complaint, along with a copy of the proposed third amended complaint which was lodged.  (ECF Nos. 43, 44.)

On August 18, 2015, Defendant Trimble filed a reply to Plaintiff's opposition.  (ECF No. 47.)

After receiving an extension of time, Defendant filed an opposition to Plaintiff's motion to amend on August 25, 2015, and Plaintiff filed a timely reply on November 18, 2015.  (ECF Nos. 48, 53.)

## II.

## DISCUSSION

### A.      Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

///

2

### B.      Allegations of First Amended Complaint

Plaintiff indicates that on August 3, 2006, the California Department of Corrections and Rehabilitation (CDCR) issued a Memorandum informing top prison officials and health care providers of the dangers associated with Valley Fever and which prisons and prisoners were most suspectible to contracting Valley Fever.  (Id. at ¶ 18.)  Valley Fever is caused when a naturally occurring fungus that is commonly found in the soil of the San Joaquin Valley is inhaled into the lungs.  (Id. at ¶ 27.)  Forty percent of people develop symptoms of acute, chronic, or disseminated Valley Fever.  (Id. at ¶ 28.)  Acute Valley Fever infection is almost always mile with few or no symptoms that resolve without treatment.  (Id. at ¶ 29.)  Chronic pulmonary Valley Fever develops when lungs abscesses form and rupture, causing severe pneumonia, most often leading to long-term hospitalization and intravenous anti-fungal treatment. (Id. at ¶ 30.)  Disseminated Valley Fever occurs when the disease spreads to the bones, brain, heart and other areas, and the most dangerous form is meningitis, which can lead to death.  (Id. at ¶ 31.)

On March 10, 2008, KVSP was issued a notice of violation by the California Department of Public Health (CDPH) because the water exceeded the arsenic Maximum Contaminant Level (MCL) of 0.010 mg/L during the first quarter of 2008.  (Id. at ¶ 22.)

On December 12, 2008, the CDPH issued another Notice of Violation to KVSP because two of the operating water wells did not produce water in compliance with the primary drinking water standards.  (Id. at ¶ 23.)  The December 12th notice ordered KVSP to perform particular tasks or face penalties.  (Id. at ¶ 24.)

On December 17, 2009, Plaintiff was diagnosed as suffering from stage 2, grade 2, Hepatitis C, which required interferon treatment that weakens the immune system and increases the risk of contracting Valley Fever.  (ECF No. 23, Amd. Compl. at ¶ 8.)

On December 22, 2009, Plaintiff was transferred to Pleasant Valley State Prison (PVSP), a known Valley Fever hot spot.  (Id. ¶ 9.)

Plaintiff requested appropriate treatment for his Hepatitis C by way of an inmate Health Care Appeal on March 10, 2010.  (Id. at ¶ 10.)  The treatment was approved.  (Id.)

3

1        On April 20, 2010, Plaintiff learned that PVSP experienced a dramatic increase in Valley Fever
2  due to construction at Coalinga State Hospital.  (Id. at ¶ 11.)  Plaintiff sought relief by way of filing
3  inmate Health Care Appeals which went unanswered.  (Id. at ¶¶ 12-16.)  Plaintiff was housed at PVSP
4  from December 22, 2009, until March 6, 2012, despite being African-American and having Hepatitis
5  C.  (Id. at ¶ 16.)

6        On March 6, 2012, Plaintiff was transferred to Kern Valley State Prison (KVSP).  (Id. at ¶ 17.)

7        Plaintiff alleges that African Americans and individuals with weakened immune systems are
8  the most likely to develop chronic or disseminated Valley Fever.  (Id. at ¶ 32.)  Plaintiff contends that
9  he was transferred to PVSP by unnamed prison officials who knew he had Hepatitis C and Defendant
10  Trimble did not transfer him out of PVSP to a Valley Fever-free environment where he could receive
11  his Hepatitis C treatment.  (Id. at ¶ 36.)  Plaintiff presents that interferon treatment for Hepatitis C
12  weakens the immune system and inmates have contracted Valley Fever after receiving interferon
13  treatment.  (Id.)  Attached to Plaintiff's amended complaint is a letter addressed to Defendant Trimble.
14  In the letter, Plaintiff requests a transfer based on his alleged increased risk of developing Valley
15  Fever because he is an African American and has Hepatitis C.  (Id. at p. 38.)

16        Between June 8, 2011, and October 2012, Defendant Biter changed the date to complete
17  repairs to the water system to comply with the drinking standards.  (Id. at ¶ 25.)  Plaintiff alleges that
18  he learned of the high levels of arsenic when he was transferred back to KVSP on March 6, 2012.  (Id.
19  at ¶ 26.)

20        On or about November 28, 2012, Plaintiff became aware that KVSP was also one of the
21  prisons in the Valley Fever endemic area and he sent a letter to Defendant Biter regarding his medical
22  condition, the arsenic in the water, and Valley Fever, but no actions were taken.  (Id. at ¶ 19.)

23        Plaintiff alleges that as a result of Defendant Biter's continuance of the date to conduct the
24  repairs to the KVSP water system, Plaintiff suffered skin pigmentation injuries because he was forced
25  to drink the arsenic tainted water.  (Id. at ¶ 46.)

26  ///
27  ///
28  ///

C.      **Analysis of Motions to Dismiss**

1.      Defendant Biter's Motion to Dismiss

Defendant Biter moves to dismiss the conditions of confinement claim relating to exposure to Valley Fever as unexhausted and moves to dismiss the conditions of confinement claim relating to the levels of arsenic in the drinking water for failure to state a claim and/or qualified.

a.      **Risk of Contracting Valley Fever/Lack of Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings.  Albino, 747 F.3d at 1170.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Because exhaustion of administrative remedies is an affirmative defense, inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  Albino holds that, in general, the defense should be brought as a Rule 56 motion for summary judgment, unless in the rare event that the prisoner's failure to exhaust is clear on the face of the complaint.  Albino, 747 F.3d 1168-1169, 1171.

///

5

Plaintiff is not required to plead exhaustion of the administrative remedies in his complaint and it is not clear from the face of the complaint that Plaintiff has not exhausted the administrative remedies as to his claim relating to high risk of contracting Valley Fever, Defendant's motion to dismiss this claim for failure to exhaust should be denied.  However, for the reasons explained below in section 2, Defendant Biter is entitled to qualified immunity and shall be dismissed from the action on that ground.  Accordingly, the motion to dismiss for lack of exhaustion is moot.

**b.   Arsenic in Kern Valley State Prison's Drinking Water**

Defendant Biter argues that Plaintiff's first amended complaint fails to state a cognizable claim for deliberate indifference to the arsenic in KVSP's drinking water.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  See Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Defendant Biter argues that the exhibits attached to Plaintiff's first amended complaint directly contradict Plaintiff's allegation that the water was dangerous.

By way of filing a motion to amend, proposed third amended complaint, and reply to Defendants' opposition to the motion to amend, Plaintiff seeks to voluntarily dismiss this claim from the action.  (See ECF Nos. 40, 42, 44, 53.)  Accordingly, the Court need not and does not address Defendant Biter's motion to dismiss this claim for failure to state a cognizable claim and/or qualified immunity, and the claim will be dismissed from the action, without leave to amend.  Consequently, Defendant Biter's motion to dismiss this claim is moot.

2.    Defendant Trimble's Motion to Dismiss

Defendant Trimble moves to dismiss the claims in the first amended complaint for failure to state a cognizable claim for relief and/or based on qualified immunity.[1]

Since the issue of qualified immunity for the Eighth Amendment claims is dispositive in this instance as to both Defendants Biter and Trimble, the Court will not address Defendant Trimble's argument that the allegations in the complaint are insufficient to state a claim.

a.    **Qualified Immunity Legal Standard**

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful.  Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

---

[1] Because the qualified immunity analysis applies equally to both Defendants Biter and Trimble, Defendant Biter is included in this analysis pursuant to 28 U.S.C. § 1915A and 1915(e)(1) (court must screen complaints filed by prisoners and dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks damages from defendants who are immune).

particular case at hand." <u>Pearson</u>, 555 U.S. at 236.  The inquiry as to whether the right was clearly established is "solely a question of law for the judge." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting <u>Tortu v. Las Vegas Metro. Police Dep't</u>. 556 F.3d 1075, 1085 (9th Cir. 2009)).  In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

It is the plaintiff that bears the burden of demonstrating that the right was clearly established at the time that the defendants acted. <u>May v. Baldwin</u>, 109 F.3d 557, 561 (9th Cir. 1997).  Defendants cannot be held liable for a violation of a right that is not clearly established at the time the violation occurred. <u>Brown v. Oregon Dep't of Corrections</u>, 751 F.3d 983, 990 (9th Cir. 2014).  A constitutional right is clearly established when its contours are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002). In light of the preexisting law the lawfulness of the officials act must be apparent. <u>Hope</u>, 536 U.S. at 739.  The court is to look to the state of the law at the time the defendants acted to see if it gave fair warning that the alleged conduct was unconstitutional. <u>Id.</u> at 741.  The Supreme Court has emphasized that it is often difficult for an official to determine how relevant legal doctrine will apply to the specific situation that is faced and that is why qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law[.]" <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1049 (9th Cir. 2002).

The Supreme Court has repeated reminded us that we are not to define clearly established at a high level of generality. <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2084 (2011).  The qualified immunity inquiry is to be taken in light of the specific context of the case, not as a broad general proposition, <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004), but "must be defined at the appropriate level of specificity[,]" <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999).

**b.    <u>Defendant is Entitled to Qualified Immunity as it is Not Clearly Established that Housing Plaintiff at PVSP/KVSP Would Violate his Eighth Amendment Rights</u>**

Qualified immunity shields an official from personal liability where he reasonably believes that his conduct complies with the law. <u>Pearson</u>, 555 U.S. at 244.  " 'Qualified immunity gives

government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " <u>Stanton v. Sims</u>, 134 S.Ct. 3, 5 (2013) (citations omitted).   In determining whether the defendant is entitled to qualified immunity, the court is to determine if "a reasonable officer would have had fair notice that [the action] was unlawful, and that any mistake to the contrary would have been unreasonable."   <u>Chappell v. Mandeville</u>, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quoting <u>Drummond ex rel. Drummond v. City of Anaheim</u>, 343 F.3d 1052, 1060–61 (9th Cir. 2003)).

In determining if the law is clearly established we first look to binding precedent.   <u>Chappell</u>, 706 F.3d at 1056.   If there is none on point, we look to other decisional law, including the law of other circuits and district courts.   <u>Id.</u> at 1056; <u>Osolinski v. Kane</u>, 92 F.3d 934, 936 (9th Cir. 1996).   The Court finds no Supreme Court or published Ninth Circuit case that has addressed whether an inmate's environmental exposure to Valley Fever or any other environmental organism would be a violation of the Eighth Amendment.

In the related case of <u>Jackson</u>, this Court issued findings and recommendations finding that Defendants are entitled to qualified immunity for housing inmates in areas in which Valley Fever spores are prevalent.   Plaintiff's allegations here are substantially identical to the complaint in <u>Jackson</u>. Plaintiff is alleging that "prison officials intentionally exposed him to [PVSP], after he was diagnosed with grade 2 stage 2 Hepatitis C and refused to transfer him to a prison free of Valley Fever disease." (ECF No. 23, Amd. Compl. at 2.)   In addition, prison officials intentionally exposed Plaintiff (an African-American) to Valley Fever while suffering from Hepatitis C while housed at KVSP.   (Id. at 3.)   Therefore, the question to be addressed here is the same as in <u>Jackson</u>.   In the corrected memorandum decision and order, Judge O'Neill found that under any definition of the constitutional right in this instance, Defendants are entitled to qualified immunity.   <u>Jackson v. Brown</u>, No. 1:13-cv-01055-LJO-SAB, __ F.Supp.3d __, 2015 WL 5732826, at *1 (E.D. Cal. Sept. 17, 2015).

This Court has found, and Judge O'Neill has held that the constitutional right at issue here was not clearly established.   <u>Jackson</u>, 2015 WL 5732826 at 8; <u>see also</u> <u>Smith v. Schwarzenegger</u>, No. 1:14-cv-0060-LJO-SAB, __ F.Supp.3d. __, 2015 WL 5915353 (E.D. Cal. October 7, 2015) (finding defendants entitled to qualified immunity on similar Eighth Amendment claims); <u>Nawabi v. Cates</u>, No.

1:13-cv-00272-LJO-SAB, 2015 WL 5915269 (E.D. Cal. October 7, 2015) (same); Gregge v.

California Department of Corrections, No. 1:15-cv-00176-LJO-SAB (E.D. Cal. Oct. 7, 2015) (same);

Hines v. Youssef, No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *10 (E.D. Cal. May 19, 2015)

(finding defendants entitled to qualified immunity because the categories of race and other forms of

respiratory exclusion criteria were not clearly established).[2]  In Jackson the court found that "the

circumstances in which an inmate's exposure to cocci while incarcerated may support an Eighth

Amendment claim are not clear." Id. at *2.  The court found no controlling authority to place

Defendants on notice that housing inmates at high risk of developing disseminated disease in areas in

which Valley Fever is endemic would be unlawful. Id. at *4-5.  "Critically, judges have disagreed as

to whether allegations that an inmate's ethnicity increases the risk of contracting Valley Fever and

developing disseminating Valley Fever states an Eighth Amendment claim.  Judges also have

disagreed as to whether an inmate's allegations that medical conditions increase the risk of contracting

Valley Fever and developing disseminated Valley Fever states an Eighth Amendment claim." Id. at

*5.

Even where the actions involved allegations materially identical to those raised in this action,

courts have granted summary judgment for Defendants reasoning that "[b]y placing a prison and other

extensive facilities in the PVSP location, attended by prison employees, officials, and support

personnel, as well as inmates, society plainly tolerates the health risks of that location." Moreno v.

Yates, No. 1:07-cv-01404-DGC, 2010 WL 1223131, *2 (E.D. Cal March 24, 2010).

A review of the case law within this district shows that there is an "obvious, legitimate, and

reasonable disagreement among judges" regarding what would be required to state a claim under the

circumstances alleged in the complaint. Jackson, 2015 WL 57532826, at *8.  The Jackson court found

that "[e]ven assuming Defendants' conduct was unlawful . . . the disagreement among judges with

regard to analogous Valley Fever cases brought by inmates in San Joaquin Valley prisons establishes

that the right at issue here was not sufficiently clear such that Defendants had 'fair warning' that their

---

[2] On May 19, 2015, District Judge Anthony W. Ishii also found that Defendants were entitled to qualified immunity from suit in an action in which an inmate challenged his confinement at Wasco State Prison due to the high probability of exposure to Valley Fever.  Hines v. Youssef, No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095 (E.D. Cal. May 19, 2015).

1   conduct was unlawful." Id. (quoting Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130, 1137

2   (9th Cir.2003)).  Due to this, the court could "find that Defendants' conduct was obviously illegal

3   (much less overwhelmingly so) because "[t]he state of the law was at best undeveloped." Jackson,

4   2015 WL 57532826 at *8 (quoting Wilson, 526 U.S. at 617).  While there has been substantial

5   litigation of the issue within this District, no consensus has emerged. Jackson at *8.  "Although that

6   litigation has shed some light on the issue, no authority has fleshed out at what point the risk of harm

7   from Valley Fever becomes sufficiently substantial for Eighth Amendment purposes." Id. (internal

8   punctuation  and citations omitted).  The court found that the defendants were entitled to qualified

9   immunity. Id.

        Accordingly, the Court finds that Defendants Biter and Trimble are entitled to qualified

11  immunity for housing Plaintiff at PVSP/KVSP and recommends dismissing Plaintiff's conditions of

12  confinement claim based on exposure to Valley Fever.[3]

13          3.      Plaintiff's Motions to Amend

14          On July 16, 2015, and August 3, 2015, respectively, Plaintiff filed a motion to amend, along

15  with a copy of the proposed second and third amended complaints.  (ECF Nos. 40, 41, 42, 44.)

16          Defendants filed an opposition to Plaintiff's motions on August 25, 2015, and Plaintiff filed a

17  reply on November 18, 2015.  (ECF Nos. 48, 53.)

18          Plaintiff's third amended complaint is presently pending before Court for review pursuant to

19  Federal Rule of Civil Procedure 15(a) and is subject to screening pursuant to 28 U.S.C. § 1915A(a).

20  Plaintiff's third amended complaint does not substantially change the claims against Defendants Biter

21  and Trimble.  However, Plaintiff seeks to add new claims and defendants, previously dismissed from

22  the action for failure to state a cognizable claim for relief.  (See ECF No. 10, Order at 2.)

23          Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's

24  pleading once as a matter of course twenty-one days after serving, or if a response was filed, within

25  twenty-one days after service of the response.  Fed. R. Civ. P. 15(a).  Otherwise, a party may amend

[3] Based on this Court's present ruling, it is unnecessary to address Defendant Trimble's request for judicial notice as it does not change the analysis. (ECF No. 37.)  Defendant requests the Court to take judicial notice of certified data and reports from the Fresno County Department of Public Health and San Joaquin County Public Health Services.

only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a).  Discretion is particularly broad where the plaintiff has previously amended the complaint.  Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile."  AmerisourceBergen Corp., 465 F.3d at 951.  Relevant to the futility factor, a plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff filed a first amended complaint on March 16, 2015.  (ECF No. 23.)  More than twenty-one days after Defendants filed their motions to dismiss, Plaintiff filed his second and third amended complaints.  Because Defendants have not consented to Plaintiff filing an amended complaint, he may only do so with leave of court.  Fed. R. Civ. P. 15(a).

### 1.   Bad Faith and Undue Delay

Undue delay, alone, is insufficient to deny leave to amend the pleadings.  Howey v. United States, 481 F.2d 1187, 1191 (9th Cir. 1973); DCD Programs v. Leighton, 833 F.2d 183, 186 (9th Cir. 1986).  However, in combination with other factors, delay may be sufficient to deny amendment.  See Hurn v. Ret. Fund Trust of Plumbing, 648 F.2d 1252, 1254 (9th Cir. 1981).  Evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).  Also, the Court should examine whether "permitting an amendment would … produce an undue delay in the litigation."  Id. at 1387.

Defendants argue that Plaintiff acted with bad faith and undue delay by adding new claims and Defendants.  Plaintiff's third amended complaint adds claims against Matthew Cate, Dr. S. Lopez, and Dr. Chung Kwang Chen based on his exposure to Valley Fever and failure to provide Hepatitis C

12

treatment in a Valley Fever free environment. (ECF No. 44 at 8, 24-28.) Plaintiff did not include these Defendants in his first or second amended complaints. (See ECF No. 20 & ECF No. 41.) However, the allegations and exhibits attached to Plaintiff's proposed third amended complaint show that he knew of the identity of the Defendants and the basis for his claims against them well in advance of filing his first and second amended complaints. (ECF No. 44 at 14-15, 18 & Exs. F, G, H, Q.) Defendants argue that adding new defendants and claims that were known to the Plaintiff at the time of a prior complaint can support a finding of undue delay and bad faith.

Defendants further argue that Plaintiff's bad faith in adding claims against Defendants Cate, Lopez, and Chen is particularly egregious in this case. Plaintiff's original complaint included the allegations against Defendants Cate, Lopez, and Chen even though he did not include them in the first or second amended complaint. The Court screened the original complaint and found only a cognizable claim against Defendant Biter based on exposure to Valley Fever. (ECF No. 8 at 5:12-19, 10:5-17.) Plaintiff was given the opportunity to file a first amended complaint or notify the Court of his intent to proceed only against Defendant Biter. Plaintiff elected to proceed against Biter only and all other claims and Defendants (including Defendants Cate, Lopez, and Chen) were dismissed from the action. (ECF No. 10.)

Mere delay in bringing a motion to amend does not equate to bad faith on the part of Plaintiff, and there is no basis to support the finding that Plaintiff intentionally delayed filing a motion to amend until after Defendants filed motions to dismiss. To the contrary, Plaintiff contends that he seeks to amend only in response to the arguments set forth in Defendants' motions to dismiss and to cure any identified defects. Given the procedural posture of this case and the fact that Plaintiff is proceeding pro se, the Court finds that the factor of undue delay and bad faith do not way against amendment.

2.     Prejudice to Defendant

Prejudice is the most critical factor in determine whether leave to amend should be granted. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The burden of showing prejudice is on the party opposing an amendment to the complaint. DCD Programs, 833 F.2d at 187.

Defendants argue that allowing Plaintiff to amend his complaint at this point will cause Defendants prejudice because both Defendants have filed motions to dismiss and Plaintiff filed

oppositions to those motions.  Defendants submit that if Plaintiff is allowed to amend, Defendants'

time and expense spent on their prior motions will be wasted, and Defendants will need to file a

renewed motion to dismiss on similar grounds.

The fact that defense counsel contends amendment would require him to litigate this action

against an additional Defendants does not alone support a finding of prejudice, particularly given that

counsel was on notice that Plaintiff initially sought relief for the alleged inadequate medical treatment

against the identified Defendants.  Furthermore, defense counsel is a Deputy Attorney General

employed by the Office of the California Attorney General.  Any increase in costs of litigation due to

the addition of seven new defendants will not be imposed on defendants themselves.  The interests of

justice support the finding that this action proceed against all of the defendants for whom Plaintiff

alleges violated his constitutional rights.  Accordingly, there is not a strong showing of prejudice

against Defendants.

3.    Futility

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  Bonin

v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); see also Miller v. Rykoff-Sexton, 845 F.2d 209, 214

(9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally

insufficient").  Futility may be found where added claims are duplicative of existing claims of patently

frivolous, or both.  See Bonin, 59 F.3d at 846.

Defendants argue the proposed claims in Plaintiff's third amended complaint are also futile

because Defendants are entitled to qualified immunity based on alleged exposure to Valley Fever at

PVSP/KVSP.

Defendants are correct that Plaintiff may not amend to add new Defendants to challenge his

exposure to Valley Fever while housed at PVSP/KVSP because Defendants (including those identified

in the proposed third amended complaint) are entitled to qualified immunity.  However, Plaintiff may

amend to allege a claim of deliberate indifference to his serious medical needs as the Court has not yet

made a ruling on such claim.  Thus, the entirety of the proposed amendment is not futile and this

factor does not necessarily weigh strongly against amendment.

14

1    Based on a balance of the foregoing factors, the Court finds that Plaintiff's motion to amend

2 shall be granted, subject to the above-identified limitations.

3         4.    Screening of Third Amended Complaint Pursuant to 28 U.S.C. § 1915A

4    Although the Court has granted Plaintiff's motion to amend the complaint, the Court has

5 simultaneously screened Plaintiff's third amended complaint and finds Plaintiff fails to state a

6 cognizable claim for deliberate indifference to his serious medical needs in violation of the Eighth

7 Amendment.

8    While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical

9 care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to

10 an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled

11 in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v.

12 Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

13 Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition

14 could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that

15 "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing

16 Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act

17 or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the

18 indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind

19 is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d

20 at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

21    "A difference of opinion between a physician and the prisoner - or between medical

22 professionals - concerning what medical care is appropriate does not amount to deliberate

23 indifference."  Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th

24 Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir.

25 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23.  Rather, Plaintiff "must show that the course of

26 treatment the doctors chose was medically unacceptable under the circumstances and that the

27 defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681

28

15

1  F.3d at 988 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks

2  omitted).

3  　　　Further, the "question whether an X-ray or additional diagnostic techniques or forms of

4  treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not

5  to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is

6  medical malpractice."  Estelle v. Gamble, 429 U.S. 97, 107 (1976).  "A difference of opinion between

7  a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983

8  claim."  Franklin v. State of Or., State Welfare Division, 662 F.2d 1337, 1344 (9th Cir. 1981);

9  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a

10  deliberate indifference to Sanchez' serious medical needs.")

11  　　　Plaintiff fails to state a cognizable claim for deliberate indifference to a serious medical need in

12  violation of the Eighth Amendment against any named Defendant.  Plaintiff contends in conclusory

13  fashion without linking any individual to an affirmative act or omission that he was denied interferon

14  treatment for his Hepatitis C.  Mere disagreement with treatment provided or a disagreement among

15  medical professionals, alone, does not support a finding of deliberate indifference.  Plaintiff is

16  cautioned that the Court previously advised him that his complaint appeared contradictory in that he

17  claims he was denied Interferon treatment for his Hepatitis C, yet complains that he was further

18  subjected to Valley Fever because inmates who undergo interferon treatment (which he was

19  apparently denied).  (ECF No. 8, at 8:7-10.)  Plaintiff's allegations demonstrate, at best, negligence on

20  the part of Doctor Chen which does not support a claim for deliberate indifference.  Plaintiff has not

21  linked Defendants Biter, Trimble, Cate or Lopez to any affirmative act or omission giving rise to a

22  claim of deliberate indifference to a serious medical need.  Thus, as to the each of the named

23  Defendants, Plaintiff fails to state a claim for relief.  The Court will grant Plaintiff one opportunity to

24  amend the complaint, as to this medical claim only, if he believes he can do so in good faith.  Plaintiff

25

26

27

28

16

may not amend as to the claims related to his exposure to Valley Fever and arsenic in the water,[4] nor may Plaintiff add any other claim(s) in a fourth amended complaint, if filed.

### III.

### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendant Biter's motion to dismiss be DENIED as MOOT;

2.      Defendant Trimble's motion to dismiss be GRANTED;

3.      Defendants Biter and Trimble are entitled to qualified immunity on Plaintiff's condition of confinement claim relating to exposure to Valley Fever at PVSP and KVSP and this claim should be dismissed, without leave to amend;

4.      Plaintiff's motion for leave to amend be GRANTED;

5.      Plaintiff's third amended complaint be DISMISSED, with leave to amend, only as to Plaintiff's claim of deliberate indifference to a serious medical need.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __December 7, 2015__

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Indeed, any claim challenging the level of arsenic in the water is not related under Rule 20 of the Federal Rules of Civil Procedure to a claim based on denial of adequate medical care.  See Fed. R. Civ. P. 20(a) (claims against multiple defendants may be joined if the claim(s) arises out of the same transaction, occurrence, or series of transactions or occurrences.)  Any claim that is not properly joined is subject to dismissal from the action.

17